# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| JAMES MARSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. CV-03-0606-JEO-W |
| v. | ) |
| | ) |
| BELLSOUTH CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the court is the motion for summary judgment of the defendant BellSouth Corporation (hereinafter "the defendant" or "BellSouth") on the claims of the plaintiff, James Marsh (hereinafter "the plaintiff" or "Marsh"). (Doc. 23).[1] The plaintiff's complaint alleges discrimination in violation of the Americans with Disabilities Act (hereinafter "ADA"). (Doc. 6, Ex. B). Having considered the parties' arguments, and evidence in support thereof, along with the relevant case law, the court finds that the defendant's motion is due to be granted for the reasons set forth herein.[2]

## FACTUAL BACKGROUND

The plaintiff began working for the defendant as a Service Technician (also "ST" herein) in Tuscaloosa, Alabama, in March 2000. (Doc. 6 at Complaint). Among his duties were the

---

[1] References to "Doc. __" are to the documents as numbered by the clerk of court in the court's record of the case.

[2] In the middle of the first complete paragraph on page seven of the plaintiff's response to the defendant's motion for summary judgment, the plaintiff makes the assertion that portions of "Dunaway's Declaration . . . should be stricken because it is inconsistent with his previous testimony and Plaintiff cannot cross examine him on that subject." To the extent that this language constitutes a motion to strike, the court finds that the plaintiff's "motion" is due to be denied. The rules provide that "supporting . . . affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). The rules do not require that affidavits reflect only what was testified to in deposition. If matters attested to in an affidavit were merely written recitation of testimony at a deposition it would be redundant and superfluous. The court further finds that Dunaway's declaration is not so inconsistent with his deposition testimony so as to warrant the striking of the same.

installation and repair of telephone service at commercial and residential locations in the Tuscaloosa area. (Marsh Dep. Vol. I at p. 42).[3] The defendant assigns Service Technicians to service requests through an electronic dispatch system that gathers customer service orders and repair requests. (Jones Dec. at ¶ 4).[4] Service Technicians interact with the system through laptop computers. (*Id.*). Jobs are automatically assigned to Service Technicians based on their proximity to the location of the job and the "age" of the service order. (*Id.*). The system was created to maximize efficiency in answering customer calls and completing requests in the most timely manner achievable. (*Id.*).

A Service Technician's job requirements include "[c]limb[ing] [telephone] poles, ladders, and work[ing] aloft with small tools." (Jones Dec. at Ex. A). Pole climbing is sometimes necessary for a Service Technician to install, repair, or otherwise work on telephone equipment and associated cables and wiring, which are often placed on telephone poles above the ground. (Jones Dec. at ¶ 5). A prerequisite for becoming a Service Technician is the successful completion of training that instructs the candidate how to safely climb telephone poles using gaffes, or spiked footgear. (*Id.*). The actual number of times a Service Technician will be required to climb a pole to complete a repair or installation is unpredictable; a Service Technician may be required to climb several poles in a single day; on other days, a Service Technician will not be required to climb a pole at all. (Dunaway Dep. at p. 30).[5] Whether a Service Technician will need to climb a pole to complete a job depends on the nature of the work

---

[3] Marsh's deposition is located at document 26 in the court's record of the case and consists of two volumes.

[4] Jones's declaration is located at document 27 in the court's record of the case.

[5] Dunaway's deposition is located at document 29 in the court's record of the case.

necessary to complete a service request, which cannot be ascertained until the Service Technician arrives at the location of the job. (Dunaway Dep. at p. 36; Jones Dec. at ¶ 8).

The plaintiff initially performed all of the requirements of a Service Technician with success. (Doc. 32 at p. 2). He was counseled twice without formal discipline - - once for his failure to comply with the defendant's ladder usage policy and once for excessive personal use of a company cell phone. (*Id.*; Dunaway Dep. at pp. 22-23; Marsh Dep. at Ex. 4 & 5). In May 2001, the plaintiff applied for and was awarded a promotion to Facility Technician. (Marsh Dep. at p. 43). A Facility Technician repairs telephone lines and cables, and the frequency with which he or she is required to pole climb is, like that of a Service Technician, unpredictable. (Marsh Dep. at pg. 56; Dunaway Dep. at pp. 48-49). Facility Technicians must pole climb at least monthly to retain their skill requirement; however, they typically climb poles far more frequently than once every month. (Dunaway Dep. at p. 50). Though they may be required to pole-climb, Facility Technicians normally work with bucket trucks, enabling them to work on phone lines "mid-span," which cannot be accessed by climbing a telephone pole. (Jones Dec. at ¶ 11). Service Technicians rarely work "mid-span" on telephone lines, so they usually do not work with bucket trucks. (*Id.*).

After the plaintiff was awarded the promotion to Facility Technician, he began to make arrangements for his necessary relocation from Tuscaloosa to Hoover, Alabama. (Marsh Dep. at pp. 44-45). On May 19, 2001, before he took his new job in Hoover, the plaintiff fell approximately ten feet to the ground while climbing down a telephone phone to retrieve a tool he needed to complete the repair of a telephone line. (Marsh Dep. at pp. 47-48). The following day, he went to the hospital, where it was found that he had injured his back and was told not to return

to work. (Marsh Dep. at pg. 53). Several days later, the plaintiff was informed that his promotion to Facility Technician had been withdrawn. (Marsh Dep. at Ex. 1).

The plaintiff returned to work on light duty in September 2001. (Marsh Dep. at pp. 33, 58). In October, the plaintiff's physician, Dr. Moon, placed the plaintiff on permanent medical restrictions that prohibited him from pole climbing and lifting or moving weights heavier than one-hundred pounds. (Marsh Dep. at p. 76; Ex. 1). The plaintiff's immediate supervisor, Ovette Jones, accommodated the plaintiff's medical restrictions by interrupting the automatic dispatch system to find jobs for the plaintiff that did not require climbing. (Jones Dec. at ¶ 6). However, it was difficult to determine in advance whether a particular job would require the plaintiff to climb a telephone pole. (Jones Dec. at ¶ 8). There were several occasions when Jones could not find enough work for the plaintiff. (Jones Dec. at ¶ 6). Jones could assign the plaintiff to a job that he anticipated would not require pole climbing, but if the plaintiff arrived at the job and discovered that pole climbing would in fact be necessary, Jones would have to send another Service Technician to complete the job for the plaintiff. (Jones Dec. at ¶ 8). The defendant maintains that its dispatch system was designed to maximize efficiency, and its accommodating the plaintiff by sending a second Service Technician to climb a telephone pole for him would cause significant delay and inefficiency in answering customers' calls. (*Id.*).

When the plaintiff indicated to Jones that his medical restrictions were permanent, the plaintiff suggested that he should be placed on permanent light duty, and that Jones could override the dispatch system indefinitely to assign him non-climbing jobs. (Jones Dec. at ¶ 7). Jones responded that the plaintiff should apply for another job in the company that did not require climbing, because to permanently override the dispatch system was not feasible. (*Id.*).

The plaintiff desired to remain a Service Technician rather than apply for another job; because he could perform every function of his job except pole climbing and heavy lifting, he offered to buy his own bucket truck so he could continue to work above the ground without climbing telephone poles. (Marsh Dep. at pp. 64-65, 66). The defendant explains that this offer was rejected because allowing the plaintiff to work out of a bucket truck would not have enabled him to perform all the necessary functions of a Service Technician; he might still be required to climb a telephone pole because bucket trucks can be used in only a narrow set of circumstances. (Dunaway Dep. at p. 36; Jones Dec. at ¶ 12). A bucket truck can be used safely only on level ground that can support its substantial weight, usually a paved road. (Jones Dec. at ¶ 12 ). It cannot be used if the road has greater than a five-degree incline; it cannot access narrow alleys or many unpaved areas, such as backyards, where the truck's weight can cause an underground septic tank to rupture or damage to sprinkler systems. (*Id.*).

In January 2002, the plaintiff was contacted by the defendant and informed that, in order to continue his employment, he would have to take another job that did not require pole climbing. (Marsh Dep. at p. 67). At that time, there were two such jobs available - - one for maintenance administrator and the other for sales associate - - both of which required the plaintiff to type with proficiency. (Marsh Dep. at p. 68; Drummond Dep. at pp. 24-25).[6] The plaintiff had little typing experience and, despite encouragement by the defendant that he take advantage of training opportunities, he failed two typing tests. (Marsh Dep. at p. 68; Drummond Dep. at p. 28; Dunaway Dep. at pp. 63-64).

In early March 2002, Jill Drummond of the defendant's Human Resources department

---

[6] Drummond's deposition is located at document 30 in the court's record of the case.

informed the plaintiff that because he could no longer perform his job as a Service Technician and because he had failed to qualify for either of the two vacant positions that did not require pole climbing, his employment with the defendant was being terminated effective March 29.  The plaintiff filed a grievance with the defendant in accordance with the Collective Bargaining Agreement negotiated by the defendant and the representative union, Communications Workers of America, AFL-CIO.  (Dunaway Dec. at Ex. A).[7]  In January 2003, the plaintiff received a letter from CWA Representative Robert Krukles, informing him that after discussing his grievance with the defendant, the Union determined that the defendant had followed the proper procedures for determining the defendant's continued employment of an employee with a permanent medical restriction, and the grievance was closed.  (Marsh Dep. at Ex. 3).

On April 19, 2002, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which he alleged that the defendant had unlawfully discriminated against him by denying him a reasonable accommodation for his disability in violation of the ADA.  (Marsh Dep. at Ex. 1).  He obtained a right to sue letter from the EEOC and initiated this action against the defendant on March 18, 2003.  (Doc. 6 at Ex. B).  The defendant now moves this court for summary judgment as a matter of law, arguing that there is no genuine issue as to any material fact under FED. R. CIV. P. 56(c).  (Doc. 23).

## MOTION FOR SUMMARY JUDGMENT

### Standard for Review

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is

---

[7]Dunaway's declaration is located at document 27 in the court's record of the case.

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided by trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## Discussion

## Disability Discrimination Under the ADA

The plaintiff alleges that the defendant discriminated against him in violation of the ADA when it failed to provide him reasonable accommodation. (Doc. 6, Ex. B at ¶ 6). Under the ADA "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a) (2000). To establish a *prima facie* case of disability discrimination, the plaintiff "must demonstrate that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of h[is] disability." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000), citing 42 U.S.C. § 12112(a) and *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996); *Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1226 (11th Cir. 1999).

The familiar burden-shifting analysis of Title VII employment discrimination actions is applicable to the plaintiff's ADA claim. *Moses v. American Nonwovens, Inc*., 97 F.3d 446, 447 (11th Cir. 1996), *cert*. *denied*, 519 U.S. 1118, 117 S. Ct. 964, 136 L. Ed. 2d 849 (1997). If the plaintiff is able to establish a *prima facie* case, the defendant will be afforded an opportunity to articulate its purported legitimate, nondiscriminatory reason for its action. Once the defendant has proffered its legitimate, nondiscriminatory reason, the plaintiff may call the defendant's proffered reason into question by offering evidence that the defendant's stated reason is merely a pretext for unlawful employment discrimination.

As noted by the court in *Richio v. Miami-Dade County*, 163 F. Supp. 2d 1352, 1359 (S.

D. Fla. 2001):

> . . . . A crucial component in alleging discriminatory treatment by an employer based on conduct proscribed by the ADA, is proof of discriminatory motive. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324, 325 n.5, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977).
>
> In establishing unlawful motive, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). . . .

*Richio*, 163 F. Supp. 2d at 1359-60.

In the typical scenario, the initial inquiry is whether the plaintiff's medical condition constitutes a disability under the ADA. Indeed, in the instant case, the defendant argues that the plaintiff cannot establish a prima facie case because he has not shown that he has a disability within the meaning of the ADA.

## No Disability Within the Meaning of the ADA

A disability is defined under the ADA and the pertinent regulations as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see* 34 C.F.R. § 104.3(j)(1). Determining whether a plaintiff has a disability involves a three-step analysis:

> First, [the] plaintiff must be impaired. Next, the court must identify the life activity that the plaintiff claims has been limited and determine whether it is a major life activity under the ADA. . . . Finally, the court must determine whether the impairment "substantially limits" that life activity. The EEOC defines this phrase to mean "significantly restricted as to the condition, manner or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1360.2(j)(1).

*Rossbach v. City of Miami*, 371 F.3d 1354 (11th Cir. 2004).

Suffering from a physical impairment is not necessarily a disability as defined by the ADA.  *See, e.g., Hilburn v. Murata Elec. North Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999) ("[A] physical impairment alone is not necessarily a disability under the ADA.").  Instead, the impairment must substantially limit a major life activity.  *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996), *cert. denied*, 520 U.S. 1274, 117 S. Ct. 2454, 138 L. Ed. 2d 211 (1997).  "Major [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Cash*, 231 F.3d at 1305, citing 29 C.F.R. § 1630.2(I).

> To be substantially limited in the major life activity of "working," the individual must be significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person having comparable training skills and abilities.  *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278 (11th Cir. 1997); *Pritchard*, 92 F.3d at 1133; 29 C.F.R. § 1630.2(j)(3)(I).  "Although a plaintiff seeking recovery under the ADA, is not required to prove a comprehensive list of jobs which [he] cannot perform, the person must provide some evidence beyond the mere existence and impact of a physical impairment to survive summary judgment." *Swain v. Hillsborough County School Bd*., 146 F.3d 855, 858 (11th Cir. 1998).  An impairment does not substantially limit the ability to work merely because it prevents an individual from performing either a particular specialized job or a narrow range of jobs.  *Id*.  Nor does the inability to perform a single, particular job constitute a substantial limitation in the major life activity of working.  *Id*.  "The inquiry is whether . . . the particular impairment constitutes for the particular person a significant barrier to employment." *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir. 1986); *see also Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir. 2000) ("To be substantially limited in the major life activity of working, an individual must be precluded from more than one type of job, even if the job foreclosed is the individual's job of choice."); *Jasany v. United States Postal Service*, 755 F.2d 1244 (6th Cir. 1985) (postal clerk with mild case of crossed eyes that caused him to develop eye strain and headaches after operating a particular machine was not substantially limited in working because he was capable of working at other jobs within the post office); *Mustafa v. Clark County School Dist*., 876 F. Supp. 1177 (D. Nev. 1995) (teacher whose anxiety disorder prevented him from working in a classroom was not substantially limited in his ability to work because he was not precluded from employment in general).

*Johnston v. Henderson*, 144 F. Supp. 2d 1341, 1351-52 (S.D. Fla. 2001).

## Plaintiff's Lack of Disability

The evidence is undisputed that the plaintiff is impaired. However, the plaintiff makes no allegation that he is substantially limited in any major life activities. Instead, he asserts that he is only limited in the activities of pole climbing and lifting objects heavier than 100 pounds, and that he has had some trouble sleeping in the past due to his back pain. (Marsh Dep. at pp. 18-20, 63-64).

Although the plaintiff does not expressly assert it, the court presumes he is attempting to establish that he is substantially limited in the major life activity of work. As such, the court deems it necessary to go through that analysis.

In *Stedman v. Bizmart, Inc*., 219 F. Supp. 2d 1212, 1220-21 (N.D. Ala. 2002), the court stated as follows:

> Prior to January 2002, case law made satisfaction of a prima facie case under the ADA, particularly meeting the "disability" prong, relatively simple. On January 8, 2002, however, the Supreme Court significantly altered the definition of "substantially limits a major life activity." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002).
>
> In *Toyota* the Supreme Court reversed the Sixth Circuit decision that found a former employee disabled because she could no longer perform all her manual tasks at work due to carpal tunnel syndrom. *See Toyota*, 534 U.S. at ----, 122 S. Ct. at 689. Curtailing previous case law defining "major life activities," the Court held that "to be substantially limiting in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.*, 122 S. Ct. at 691. Specifically, the Court stated that "[w]hen addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Id*. at 693.

> As a result, this decision creates additional obstacles for many plaintiffs in disability cases, particularly those alleging discrimination in the workplace. Under *Toyota* it appears that courts now have greater discretion in determining what is a major life activity and what interference with that activity is substantial enough to constitute a disability.

The plaintiff makes no allegation that he cannot perform chores around his house due to his impairment or that he cannot enjoy activities that he used to be able to enjoy. To the contrary, the plaintiff testified that he can fish and hunt deer. (Marsh Dep. at p. 22). He occasionally mows the lawn at his house and conducts repair work around his home. (Marsh Dep. at pp. 22-25). He can walk, dress himself, feed himself, cook barbeque, wash dishes, shop for groceries, go to the movies, eat at restaurants, and drive his children to school every day. (Marsh Dep. at pp. 25, 28-31). He also owns a boat that he has driven since his injury. (Marsh Dep. at p. 32). He was able to return to his job with the defendant and perform every necessary task except pole-climbing and lifting or moving weights over one-hundred pounds. (Marsh Dep. at pp. 64-65). Since his termination, the plaintiff has held at least two jobs as a technician, one for Standard Heating and another for ADT. (Marsh Dep. at p. 60; Marsh Dep, vol. II, at pp. 7-8).

Beyond the allegation that his back injury substantially limits his ability to pole climb and lift heavy objects, the plaintiff has failed to offer evidence of any life altering activity under the ADA. The evidence establishes that the plaintiff is quite capable of performing all of his major life activities, despite his condition. The court does not find the plaintiff's allegations and evidence sufficient to overcome the defendant's assertion that he did not have a disability as that term is defined by the ADA. Therefore, the court cannot find that the plaintiff is precluded from employment in general. To the contrary, the plaintiff is currently working as a technician for ADT. The fact that the plaintiff is no longer able to work as a Service Technician for BellSouth

is not sufficient for purposes of defining "disability" under the ADA.  *See e.g., Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999);  *Rossbach*, 371 F. 3d at 1354.  Instead, the plaintiff must show that he is precluded from working "a class of jobs or a broad range of jobs."  This he has not done.[8]

### Defendant's Perception of Plaintiff's Disability

In his reply brief, the plaintiff concedes that "[o]n the surface it would appear that he is not disabled as required by the ADA." (Doc. 32 at p. 4).  Instead, he argues that the defendant perceived him as disabled and terminated his employment because of that perception.[9]  (*Id*. at pp. 4-5).  As stated previously, a disability is defined under the ADA and the pertinent regulations as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; **or (C) being regarded as having such an impairment**."  42 U.S.C. § 12102(2); *see* 34 C.F.R. § 104.3(j)(1) (emphasis added).  The Eleventh Circuit has stated that:

> Under the "regarded as" prong, a person is "disabled" if [his] employer perceives [him] as having an ADA-qualifying disability, even if there is no factual basis for that perception.  *Williams*, 303 F.3d at 1290.  As with actual impairments, however, the perceived impairment must be one that, if real, would limit substantially a major life activity of the individual.

*Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213 (11th Cir. 2004).

In the instant case, Marsh argues that BellSouth perceived his back injury to be

---

[8]To the extent that the plaintiff argues that the pole climbing restriction applies to others, including "services [sic] technicians, installation and maintenance facility technicians and construction facility technicians," the court does not find that sufficient to support his claim.  (Doc. 32 at p. 4 (citing Dunaway Dep. at pp. 48-49)).

[9]The plaintiff describes his actual disability in his complaint and in his answers to interrogatories as "one torn disc and one bulging disc" in his back, which prohibits him from climbing poles and from lifting or moving objects heavier than 100 pounds.  (Doc. 6, Ex. B at ¶ 6; Doc. 33, Ex. A, at ¶ 13).  His reply brief contains his first allegation that the defendant discriminated against him because it *perceived* him to be disabled.

substantially limiting in the major life activity of work. (Doc. 32 at p. 6). The defendant, on the other hand, argues that the plaintiff was not disabled, and it did not perceive him to be. (Doc. 33 at pp. 1-2). The defendant maintains that though it believed the plaintiff had "minor physical impairments," it did not believe him to be substantially impaired. To the contrary, it encouraged him to learn new skills so that he could fill another position within the company that did not require him to climb telephone poles. (Doc. 33 at p. 2; Drummond Dep. at p. 24). The only task the defendant thought the plaintiff could not do was pole climb. (Doc. 33 at p. 2). As noted previously, for BellSouth to perceive the plaintiff to be substantially limited in the major life activity of working, it would have to perceive him to be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Carruthers*, 357 F.3d at 1216.

For the reasons previously set out herein, the court finds that no reasonable jury could conclude that Marsh has established that BellSouth regarded his back impairment as a substantial limitation to his ability to work as is required by the ADA. The only support Marsh offers for his contention that BellSouth regarded him as disabled is the fact that it terminated his employment. Such a contention, without more, is insufficient to establish that BellSouth perceived Marsh to be substantially limited in performing a "class of jobs or a broad range of jobs in various classes." As such, the court finds that the plaintiff has failed to show that he has a disability as defined by the ADA, and thus, cannot establish a *prima facie* case.[10]

---

[10] Even if the plaintiff had established that he was disabled, the court also finds that he could not show that he was a qualified individual. A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). The plaintiff "must demonstrate that [he] was a qualified individual at the time of [his] termination in order to bring a claim." *Paleologos v. Rehab. Consultants, Inc.*, 990 F. Supp. 1460, 1466 (N.D. Ga. 1998).

The defendant argues that pole climbing was an essential function of the plaintiff's job as a Service Technician, and

---

that because the plaintiff was permanently restricted from climbing telephone poles, he was no longer qualified to fulfill his job requirements. Although an ST may have days that require no pole climbing, he may have days that require him to climb four or five telephone poles on one job. At the very least, an ST is required to climb a pole monthly to retain his skill set. (Dunaway Dep. at pp. 30, 50; Jones Dec. at ¶ 8). The frequency with which an ST will be required to pole climb is unpredictable and dependent on the job at hand. (Dunaway Dep. at 30, Jones Dec. at ¶ 8). The defendant asserts that pole climbing is a "basic ST job requirement" and a "basic, major part of the ST job." (Jones Dec. at ¶ 5). The defendant argues, therefore, that it is impossible to anticipate with certainty whether a particular job will necessitate pole climbing, so that the plaintiff's supervisors could not permanently hand-pick jobs for the plaintiff that they believed would not require him to climb any telephone poles. (Dunaway Dep. at 36-41, Jones Dec. at ¶ 8). If the plaintiff was mistakenly sent to a job that required him to pole climb, a second ST would have to be sent to climb the pole for him, which the defendant argues would be unfair to its other STs because pole climbing is difficult and dangerous, requiring special training. (Jones Dec. at ¶¶ 5, 10). To send a second ST to the location of the job to complete the installation or repair for the plaintiff would also be inefficient and time-consuming by taking the second Service Technician from other service requests. (Jones Dec. at ¶ 8). The defendant asserts that, by allowing the plaintiff to continue working as an ST on permanent light duty, without requiring him to pole climb, would be an unreasonable accommodation because it would undermine its commitment to serving its customers in the most efficient manner possible. (Dunaway Dep. at pg. 38-39; Jones Dec. at ¶¶ 8, 9). Because an ST's ability to pole-climb is necessary to maintain the defendant's efficiency and productivity, the defendant argues that pole climbing was an essential function of the plaintiff's job, and that because the plaintiff could not perform that function, he was no longer qualified to remain an ST once his medical restrictions became permanent.

In the plaintiff's opinion, he was qualified because pole-climbing is not an essential function of the ST's job. The plaintiff points out that pole climbing is only one of nineteen functions listed as job requirements for an ST. (Marsh Dep. Vol. I at Ex. 7). An ST may not even be required to climb a telephone pole on some days. (Dunaway Dep. at pg. 30). The plaintiff argues that this unpredictability weakens the defendant's claim that pole climbing was an essential function of the plaintiff's job. The plaintiff could perform every job requirement without restriction except pole climbing and heavy lifting. (Marsh Dep. at pg. 76; Ex. 1).

The plaintiff's argument is not persuasive. Not only can the plaintiff not pole climb, but he also cannot lift anything over 100 pounds. Therefore, he cannot perform two of the 19 responsibilities of an ST. While the plaintiff thinks the fact that he can perform all but two functions of the ST job undermines the defendant's assertion that he is not qualified for the ST job, the court disagrees. By the plaintiff's reasoning, he would be qualified for the ST job if he could do everything on the responsibilities list but "repair[], adjust[], clean[], or replace[] faulty telephone equipment," because that is only one of 19 responsibilities of the job. There is no indication in the record that any one of the enumerated responsibilities is less necessary than any of the others. Moreover, the ADA directs that

> consideration shall be given to the employers's judgment as to what junctions of a job are essential, and if an employer has prepared a written job description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 1211(8). Therefore, the plaintiff has failed to show that pole climbing and heavy lifting are not essential functions of the Service Technician job.

The plaintiff, likewise, could not have established that he was subjected to unlawful discrimination . To do so, he would first have to establish that a reasonable accommodation existed that would have allowed him to perform his job duties. *Willis v. Conopco*, 108 F.3d 282, 283 (11th Cir. 1997). The employer is entitled to summary judgment unless the employee carries "his burden of producing probative evidence that reasonable accommodations were available." *Id.* at 285.

Because the court has already found that the plaintiff was not disabled under the ADA, the defendant was not under a duty to accommodate him. *See* 42 U.S.C. § 12112(b)(5)(A). Even had the plaintiff been disabled, he has failed to show that he was denied a reasonable accommodation, and thus, discriminated against because of his disability.

The plaintiff contends that the defendant should have accommodated him by handpicking service calls for him to make. However, the defendant has testified that accommodating the plaintiff in such a way would have required his supervisor to override the dispatch system and speculate as to which jobs might not require pole climbing, resulting in inefficiency and decreased productivity. Specifically, Dunaway testified that:

## CONCLUSION

Premised on the foregoing, the court finds that the plaintiff has failed to establish a *prima facie* case of discrimination under the ADA. As such, the defendant's motion for summary judgment is due to be granted. An order in accordance with the court's findings will be entered contemporaneously herewith.

---

| | | |
|---|---|---|
| | A. | [A]ll people who are STs have to be able to climb to perform the functions of the job if they are dispatched through the dispatch system. The only way I could work people who are not is isolate those people to inside troubles and that messes up the whole dispatch system. I have to go in and manually pull those jobs out and assign that work. That messes up the whole dispatch strategy as far as how you are going to dispatch in geographic proximity and location. |
| | | As far as other people being able to climb poles, yes, other people are able to climb poles and do the work. |
| | Q. | And you just said that there would be - - if you had one of your 28 people that could not climb poles - - |
| | A. | You have to make work for them to do, in essence. |
| | Q. | And that's at least possible within your organization? |
| | A. | There are periods of time when we have accommodated people with restrictions for short periods of time. But it's not - - it requires extra work and it's not efficiently using the dispatch system. |
| | Q. | Bu, again, it is something that could be done and, in fact, has been done? |
| | A. | With extra effort and loss of productivity and efficiency, it can be accomplished. |

(Dunaway Dep. at pp. 36-40).

The ADA does not require the employer to lower productivity and efficiency standards by accommodating the plaintiff. *See e.g. McCollugh v. Atlanta Beverage Co.*, 929 F. Supp. 1489 (N.D. Ga. 1996) (finding an accommodation that would decrease efficiency and be unfair to other unimpaired workers unreasonable). As such, the court finds the plaintiff's proposed accommodation unreasonable.

After considering the evidence before the court in this matter, the court finds that the plaintiff has not satisfied the disability requirement of the ADA as articulated in § 12102(2)(A). He has not shown that his situation substantially limited one or more of his major life activities at the time of his termination. Though the plaintiff clearly suffers some impairment, that impairment does not rise to a disability as defined by the ADA in that it does not render him physically unable to care for himself or to function in a major life activity. The court, therefore, finds that the evidence does not present a genuine issue of material fact regarding whether the plaintiff suffers an impairment that substantially limits a major life activity.

**DONE**, this the 21st day of July, 2005.

_____
**JOHN E. OTT**
United States Magistrate Judge